## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

TILSON TECHNOLOGY
MANAGEMENT, INC.

      Plaintiff,

v.

MASTEC NORTH AMERICA, INC.,

      Defendant.

Case No. _____

_____

## COMPLAINT

Plaintiff, Tilson Technology Management, Inc. ("**Tilson**"), by and through its undersigned counsel, files this Complaint and sues Defendant, MasTec North America, Inc. ("**MasTec**").  In support of its complaint, Tilson alleges as follows:

### NATURE OF THE CASE

1.    This case concerns a design-build construction project in Miami, Florida (the "**Project**") in which Verizon Sourcing LLC ("**Verizon**") retained prime contractor, MasTec, to provide certain design, construction and management services for Verizon's One Fiber Initiative project in Florida and various other markets.

2.    Verizon's One Fiber Initiative was intended to build extensive fiber optic distribution networks outside of Verizon's existing territories to support cellular and enterprise customer growth by building and leveraging Verizon's existing and future network infrastructure.

3.    MasTec retained Tilson, as a subcontractor, to provide certain engineering services, including permitting, in connection with Verizon's One Fiber Initiative in Florida.

128013788.1

4.    MasTec terminated Tilson without cause with regard to more than fifty percent (50%) of the scope of work contemplated at the time of bidding, and refused to pay Tilson for the costs Tilson incurred in the performance of the work prior to termination.

## THE PARTIES

5.    Tilson, a Maine corporation, is a design, build and operating firm that specializes in providing network deployment and information system professional services to telecom, construction, utility and government clients, and has its principal place of business in Cumberland County, Maine.

6.    MasTec, a Florida corporation, is a design build company that also installs and maintains telecommunication infrastructure, and has a principal place of business in Miami-Dade County, Florida.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(b), as Defendant is found in this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Project

9.    On May 4, 2018, Tilson and MasTec entered into a Master Agreement for Engineering Services ("**MSA**"), pursuant to which Tilson agreed to provide engineering services for projects, which scope and markets would be specified under separate Work Orders.  A copy of the MSA is attached as **Exhibit A**.

2

10.     According to the MSA, Tilson's "Services" are defined as "all labor, skill, materials, work, and other things necessary to perform the engineering services for the Project . . ."

11.     With respect to changes to the Project, the MSA provides in pertinent part:

> [MasTec], without invalidating or breaching the Agreement, may at anytime order changes to [Tilson's] Services or Schedule by Change Order or Change Directive. If [Tilson] claims that a change requested by [MasTec] is cause for an increase or decrease in the cost of or the time required for performance of the Services, [Tilson] shall give Contractor written notice of such increase or decrease within two (2) business days following receipt of such request … Any adjustment in the Engineer's compensation shall be determined by agreement of the Parties or, if there is no such agreement, pursuant to the unit rates set forth in Exhibit A. If no unit rate is available for the applicable Services performed, Engineer shall be reimbursed at an agreed upon rate.

12.     On July 16, 2018, Tilson and MasTec entered into Project Work Order 02 ("**Work Order 2**"), in which MasTec engaged Tilson to perform such engineering services for the Project in Miami, Florida.  A copy of Work Order 2 is attached as **Exhibit B**.

13.     Work Order 2 estimated the quantity of core work to be 2,463 miles ("**Core Work**" or "**Core Miles**").

14.     "Core Miles" included work surrounding the main runs – i.e., the main feeders running aerially, underground, or both.

15.     Tilson's services on the Project included "feasibility studies, route selection, field surveys, OSP engineering, drafting, permitting, project management, construction management, quality control, construction and as-built work necessary to product a quality fiber optic cable network for the Project."

3

## MasTec's Deletion of Core Miles and Replacement with ODN Miles

16.     Tilson's bid and the negotiated Unit Rates set forth in Work Order 2 were based upon MasTec's representation that it would assign nearly 1,000 Core Miles of work to Tilson.

17.     Tilson began and completed work on 416 Core Miles between July 5, 2018 and October 1, 2020.

18.     On or about February 26, 2019, before Tilson completed the work originally contemplated in Work Order 2, MasTec changed the scope of Tilson's Services.  Specifically, MasTec informed Tilson that MasTec would not be assigning any additional Core Miles to Tilson above the then-assignment of 416 Core Miles.

19.     MasTec then indicated to Tilson that MasTec would assign a new and different scope of work for 2,000 miles for the engineering of the ODN Infrastructure ("**ODN Work**" or "**ODN Miles**").  "ODN Miles" include the fiber extensions that branch off to supply homes and businesses.

20.     The parties understood that the ODN Work was assigned to Tilson in an effort to replace MasTec's substantial change in the Core Work, such that Tilson would not realize a loss from the preparations Tilson had made to complete the Core Miles.

21.     Contrary to MasTec's original representation that it would assign Tilson 2,000 ODN Miles, MasTec only assigned Tilson 1,000 miles of ODN Work.

22.     Tilson invested significant time, resources and money into the Services required to begin performing the ODN Work based upon MasTec's representation that MasTec would assign to Tilson 2,000 ODN Miles.

23.     Moreover, MasTec demanded that Tilson retain and supply a Project staff that would enable Tilson to complete 100 ODN Miles per month.

128013788.1

24.   Further, MasTec represented to Tilson that Tilson would have ODN Miles to work on through the first quarter of 2022.

25.   The agreed upon rates-per-mile in Tilson's bids for the Project were based upon the quantities of work that MasTec represented would be assigned to Tilson.

26.   Moreover, MasTec was aware that Tilson reduced certain rates with the understanding that MasTec provide Tilson with a minimum quantity of ODN Miles in order to support the cost structure Tilson would incur to prepare for and perform the ODN work.

### MasTec's Suspension of the ODN Work

27.   On March 6, 2020, after Tilson had only completed 114 ODN Miles of the nearly 1,000 ODN Miles guaranteed by MasTec, MasTec changed the scope of Tilson's work once again by ordering Tilson to stop work on all ODN Work ("**ODN Stop Work Notice**").  A copy of the ODN Stop Work Notice is attached as **Exhibit C**.

28.   In the ODN Stop Work Notice, Tanjanea Spicer, Project Manager of MasTec, stated:

> Please stop all ODN work and provide proof of the current status of work. Any engineering work that has not already been submitted as of today you cannot submit.

*See* **Exhibit C**.

29.   On March 12, 2020, Tilson notified MasTec of the significant cost impacts resulting from MasTec's Stop Work Notice related to the ODN Work ("**Notice of Cost Impact**").  A copy of Tilson's Notice of Cost Impact is attached as **Exhibit D**.

30.   MasTec has refused and failed to compensate Tilson for the significant cost impacts resulting from the scope changes.

5

31.     In summary, MasTec terminated significant portions of Tilson's scope of work (in both Core and ODN Miles), and has refused to compensate Tilson for this.

**MasTec's Refusal to Pay Invoices for Work Performed**

32.     In addition to the scope changes identified above, MasTec has also refused to pay for: (i) a significant number of outstanding invoices for work performed, and (ii) claims for out-of-scope work that MasTec directed Tilson to perform.

33.     More specifically, MasTec refused to pay Tilson for work performed in excess of $1 million, which was identified on nearly three hundred (300) outstanding and overdue invoices.

34.     MasTec has also refused to compensate Tilson for out-of-scope work that MasTec directed Tilson to perform.

35.     MasTec refused to compensate Tilson for additional costs related to MasTec's directive to convert certain mileage to 3GIS.  The conversion required a significantly expanded level of effort, much of it manual, that was not identified in the Scope of Work.

**COUNT I**
**BREACH OF CONTRACT**

36.     Tilson re-alleges and incorporates paragraphs 1-35 above as if fully set forth herein.

37.     Tilson and MasTec entered into the MSA and Work Order 2.

38.     MasTec breached the terms of the MSA and Work Order 2 by failing to pay Tilson for the Services it performed.

39.     MasTec breached the terms of the MSA and Work Order 2 by failing to timely pay Tilson's outstanding invoices for work performed.

40.     MasTec breached the terms of the MSA and Work Order 2 by failing to timely pay Tilson for out-of-scope work directed by MasTec.

41.     MasTec breached the terms of the MSA by failing to reimburse Tilson for the increases in costs caused by MasTec's changes to the scope of Tilson's Services.

42.     As a direct and proximate result of MasTec's breach of the MSA and Work Order 2, Tilson has suffered damages.

**WHEREFORE**, Plaintiff Tilson Technology Management, Inc. demands judgment against MasTec North America, Inc. for damages, prejudgment interest, costs, and attorneys' fees pursuant to the MSA, and such other further relief as the Court deems necessary and proper under the circumstances.

**COUNT II**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

43.     Tilson re-alleges and incorporates paragraphs 1-42 above as if fully set forth herein.

44.     MasTec is obligated to perform under the terms of the MSA and Work Order 2.

45.     The MSA and Work Order 2 include an implied covenant of good faith and fair dealing that imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.

46.     Tilson has a reasonable expectation that MasTec would act in good faith and assign sufficient amounts of work to Tilson so that Tilson would not incur losses in the performance of required Services to MasTec prior to the engineering of assigned Core Miles or ODN Miles.

47.     Further, Tilson had a reasonable expectation that MasTec would compensate Tilson for any Services it performed at MasTec's direction that were not contemplated by the Unit Prices set forth in Work Order 2.

128013788.1

48.    MasTec materially breached the duty of good faith and fair dealing by, including but not limited to:

    a.    By failing and refusing to pay Tilson for costs and expenses associated with the engineering and permitting of approximately 1000 Core Miles that MasTec ultimately reduced to 416 miles;

    b.    By failing and refusing to pay Tilson for costs and expenses associated with the engineering and permitting of approximately 2000 ODN Miles that MasTec ultimately changed to 114 miles;

    c.    By failing to compensate Tilson for the Services Tilson performed in preparation for the engineering and permitting of Core Miles or ODN Miles that Tilson ultimately terminated; and

    d.    By failing and refusing to pay Tilson for the Services Tilson performed by retaining a Project staff for the engineering and permitting of 100 ODN Miles a month through the first half of 2022.

49.    Tilson performed its duties under the MSA and Work Order 2.

50.    As a direct and proximate result of the breach of good faith and fair dealing, Tilson has been damaged.

**WHEREFORE**, Plaintiff Tilson Technology Management, Inc. demands judgment against MasTec North America, Inc. for damages, prejudgment interest, costs, and attorneys' fees pursuant to the MSA, and such other further relief as the Court deems necessary and proper under the circumstances.

<u>**COUNT III**</u>
<u>**QUANTUM MERUIT**</u>

51.    Tilson re-alleges and incorporates paragraphs 1-50 above as if fully set forth herein.

52.    Tilson entered into the MSA and Work Order 2 with MasTec.

53.    Tilson fully and completely performed Services pursuant to the MSA and satisfied all material terms and conditions of the MSA and Work Order 2 prior to MasTec's ODN Stop Work Notice.

8

128013788.1

54.     MasTec reasonably understood that Tilson would not have performed Services pursuant to the MSA and Work Order 2 without full and complete payment.

55.     MasTec wrongfully retained the benefit of Tilson's Services without paying Tilson as required by the MSA.

56.     Tilson is entitled to damages from MasTec for the reasonable value of the performance of the Services, plus interest, and any other just costs awarded by the Court.

**WHEREFORE**, Plaintiff Tilson Technology Management, Inc. demands judgment against MasTec North America, Inc. for damages, prejudgment interest, costs, and such other further relief as the Court deems necessary and proper under the circumstances.

## <u>COUNT IV</u>
## <u>UNJUST ENRICHMENT</u>

57.     Tilson re-alleges and incorporates paragraphs 1-56 above as if fully set forth herein.

58.     Tilson conferred a benefit on MasTec by performing work under the MSA and Work Order 02.

59.     MasTec voluntarily accepted and retained the benefit of Tilson's work.

60.     MasTec has refused to pay for the benefits it received through Tilson's work by, among other things failing to compensate Tilson for Services it performed prior to termination.

61.     It would be inequitable for MasTec to retain the benefit of the work Tilson performed if MasTec does not pay Tilson for the value of such work.

62.     Tilson is entitled to recover the reasonable value of labor, services, and materials provided to MasTec.

**WHEREFORE**, Plaintiff Tilson Technology Management, Inc. demands judgment against MasTec North America, Inc. for damages, prejudgment interest, costs, and such other further relief as the Court deems necessary and proper under the circumstances.

9

<u>**COUNT V**</u>
<u>**NEGLIGENT MISREPRESENTATION**</u>

63.　　Tilson re-alleges and incorporates paragraphs 1-62 above as if fully set forth herein.

64.　　MasTec made false statements of material fact to Tilson.  These false statements of material fact included, but were not limited to: (1) that MasTec would assign a certain quantity of Core Miles to Tilson under Work Order 2; (2) that MasTec would assign a certain quantity of ODN Miles to Tilson under Work Order 2; (3) that Tilson should staff the Project in preparation to complete 100 miles per month; and (4) that MasTec would assign Tilson enough miles to keep Tilson working on the Project through at least the first quarter of 2022.

65.　　MasTec knew or should have known that these representations were false when MasTec made them to Tilson.

66.　　MasTec intended that Tilson would rely on MasTec's statements.  Specifically, MasTec intended that Tilson would rely on MasTec's representations:

　　　　　(1)　　to prepare Tilson's bid;

　　　　　(2)　　to develop Unit Rates and costs-per-mile for the Project;

　　　　　(3)　　to staff the Project;

　　　　　(4)　　to develop software for the Project;

　　　　　(5)　　to lease or purchase equipment, vehicles and office space for the Project; and

　　　　　(6)　　to expend other costs in furtherance of Tilson's performance on the Project.

67.　　Tilson relied on MasTec's statements when preparing its bid, when entering into the MSA, when entering into Work Order 2, and when engaging in various other affirmative conduct.

68.　　Tilson was damaged by Tilson's reliance on MasTec's statements.

10

128013788.1

**WHEREFORE**, Plaintiff Tilson Technology Management, Inc. demands judgment against MasTec North America, Inc. for damages, prejudgment interest, costs, and attorneys' fees, and such other further relief as the Court deems necessary and proper under the circumstances.

Dated: February 18, 2022.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
777 S. Flagler Drive, Suite 1700
West Palm Beach, FL 33401
Telephone: 561-835-9600
Facsimile:  561-835-9602

By: _/s/ W Mason_
Florida Bar No. 66229
wmason@foxrothschild.com

*Attorneys for Plaintiff*

11

128013788.1